**Ansaari SHAKKA, Plaintiff–Appellant,**

v.

**Sewall SMITH, Warden; T. Purnell, Chief of Security; Officer Bond, Co II; Officer Byrnes, Co II; Officer Hutchins, Co II; Officer Wells, Lieutenant, Defendants–Appellees.**

No. 94–7291.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 31, 1995.

Decided Dec. 12, 1995.

**ARGUED:** Neal Lawrence Walters, Gilliam, Scott & Kroner, P.C., Charlottesville, Virginia, for Appellant. Amy Kushner Kline, Assistant Attorney General, Baltimore, Maryland, for Appellees. **ON BRIEF:** J. Joseph Curran, Jr., Attorney General of Maryland, Baltimore, Maryland, for Appellees.

Before RUSSELL, WILKINS, and LUTTIG, Circuit Judges.

Affirmed by published opinion. Judge Wilkins wrote the opinion, in which Judge Russell and Judge Luttig joined.

## OPINION

WILKINS, Circuit Judge:

The district court granted summary judgment against Ansaari Shakka in an action in which he alleged that prison officials subjected him to cruel and unusual punishment in violation of the Eighth Amendment. He asserted that the named prison officials were deliberately indifferent to his serious medical needs by depriving him of a wheelchair and that they intentionally subjected him to inhu-

mane conditions of confinement. We agree with the district court that Shakka has failed to raise a genuine issue of material fact necessitating trial and that the prison officials are entitled to judgment as a matter of law. Consequently, we affirm.

## I.

■ Although the defendant prison officials dispute many of the factual allegations made by Shakka, for purposes of evaluating the appropriateness of summary judgment, we set forth the facts viewed in the light most favorable to him. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.") (second alteration in original) (internal quotation marks omitted); Fed.R.Civ.P. 56(c) (Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

On September 20, 1993, while housed as an inmate in a hospital ward at a Maryland penitentiary, Shakka pulled a sink and accompanying plumbing fixtures from a wall, resulting in flooding of the entire floor. Having dismantled the plumbing fixtures, Shakka then used a pipe to break windows in the immediate area. This behavior prompted a visit by a prison psychologist, Joseph Fuhrmaneck. Shakka's violent and destructive actions, coupled with his unwillingness to communicate concerning the situation, led Fuhrmaneck to believe that Shakka remained in danger of another aggressive episode and that intervention was necessary. Accordingly, Fuhrmaneck ordered that Shakka temporarily be placed in another cell without any of his belongings, including his wheelchair. Fuhrmaneck believed that re-

moving all stimuli and materials that could be used in a violent manner would quiet Shakka. In particular, Fuhrmaneck sought to prevent Shakka from disassembling his wheelchair, as he had the plumbing fixtures, and using it to harm himself or others. Fuhrmaneck instructed that the wheelchair was not to be returned to Shakka until further notice. After examining Shakka the following day, Fuhrmaneck directed that the wheelchair be returned.

During the day that Shakka was incarcerated without his wheelchair, inmates threw human feces and urine into his cell, striking him and his surroundings. Shakka requested that he be allowed to shower and that he be provided with cleaning materials. Although he was provided with water and cleaning materials, he was not allowed to shower for three days.

Shakka brought this action pursuant to 42 U.S.C.A. § 1983 (West 1994), claiming that he was deprived of his Eighth Amendment protection from cruel and unusual punishment. Shakka named Warden Sewall Smith, Chief of Security Theodore Purnell, Correctional Officer Gershom Byrnes, Sergeant Stephen Hutchins, and Lieutenant Phillip Wells.[1] The district court granted summary judgment in favor of these prison officials, and Shakka appeals.

## II.

■ The Eighth Amendment prohibits the infliction of cruel and unusual punishment on one convicted of a crime. U.S. Const. amend. VIII.[2] Scrutiny under the Eighth Amendment is not limited only to those punishments meted out by statute or imposed by a sentencing judge. *See Wilson v. Seiter*, 501 U.S. 294, 300, 111 S.Ct. 2321, 2325, 115 L.Ed.2d 271 (1991). The Amendment also provides protection with respect to "the treatment a prisoner receives in prison and the conditions under which he is confined." *Helling v. McKinney*, —— U.S. ——, ——, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22

---

1. Shakka also named Correctional Officer Bond; however, execution of service was never returned.

2. The Eighth Amendment applies to the States through the Fourteenth Amendment. *Wilson v. Seiter*, 501 U.S. 294, 296–97, 111 S.Ct. 2321, 2322–23, 115 L.Ed.2d 271 (1991).

(1993). The showing necessary to demonstrate that the deprivation of which a prisoner complains is serious enough to constitute cruel and unusual punishment "varies according to the nature of the alleged constitutional violation." *Hudson v. McMillian,* 503 U.S. 1, 5, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992). In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements—that "the deprivation of [a] basic human need was *objectively* 'sufficiently serious,'" and that "*subjectively* 'the officials act[ed] with a sufficiently culpable state of mind.'" *Strickler v. Waters,* 989 F.2d 1375, 1379 (4th Cir.) (second alteration in original) (quoting *Wilson,* 501 U.S. at 298, 111 S.Ct. at 2324), *cert. denied,* — U.S. ——, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993).

■ Because evolving precepts of humanity and personal dignity animate the Eighth Amendment, we are guided by contemporary standards of decency in determining whether an alleged harm is sufficiently deleterious to satisfy the objective component of an Eighth Amendment claim. *Hudson,* 503 U.S. at 8, 112 S.Ct. at 999–1000; *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). We are mindful, however, that the constitutional prohibition against the infliction of cruel and unusual punishment "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson,* 501 U.S. at 298, 111 S.Ct. at 2324 (citations and internal quotation marks omitted). Indeed, the ordinary discomfort accompanying prison life is part and parcel of the punishment those individuals convicted of criminal offenses endure as recompense for their criminal activity. *Hudson,* 503 U.S. at 9, 112 S.Ct. at 1000. Accordingly, only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim. *Id.* at 8–9, 112 S.Ct. at 999–1000.

■ In the context of a conditions-of-confinement claim, to demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment claim, a prisoner must "produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions," *Strickler,* 989 F.2d at 1381, or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions, *see Helling,* — U.S. at ——, 113 S.Ct. at 2482. Compelling a showing of significant physical or emotional harm, or a grave risk of such harm, infuses an element of objectivity into the analysis, lest resolution of the seriousness of a deprivation devolve into an application of the subjective views of the judges deciding the question. *Strickler,* 989 F.2d at 1379–80.

■ And, "[b]ecause society does not expect that prisoners will have unqualified access to health care," the objective component of an Eighth Amendment claim based on a deprivation of medical attention is satisfied only if the medical need of the prisoner is "'serious.'" *Hudson,* 503 U.S. at 9, 112 S.Ct. at 1000 (quoting *Estelle,* 429 U.S. at 104, 97 S.Ct. at 291).

■ The subjective component of an Eighth Amendment claim challenging either the conditions of confinement or the deprivation of a serious medical need is satisfied by a showing of deliberate indifference by prison officials. *Wilson,* 501 U.S. at 303, 111 S.Ct. at 2326–27; *see Farmer v. Brennan,* — U.S. ——, ——, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). "[D]eliberate indifference entails something more than mere negligence, ... [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* — U.S. at ——, 114 S.Ct. at 1978. It requires that a prison official know of and disregard the objectively serious condition, medical need, or risk of harm. *See id.* at ——, 114 S.Ct. at 1979.

With these principles in mind, we turn to Shakka's claims.

### III.

■ Shakka first maintains that the district court erred in holding that the temporary deprivation of his wheelchair did not constitute deliberate indifference to a serious

medical need in violation of his Eighth Amendment rights. We do not doubt that the failure to provide a wheelchair for an inmate may constitute deliberate indifference to a serious medical need in some circumstances. *See, e.g., Weeks v. Chaboudy*, 984 F.2d 185, 187–88 (6th Cir.1993); *Cummings v. Roberts*, 628 F.2d 1065, 1068 (8th Cir. 1980); *see generally LaFaut v. Smith*, 834 F.2d 389, 392–94 (4th Cir.1987) (knowing failure to provide adequate toilet facilities to paralyzed wheelchair-bound prisoner violated Eighth Amendment). But, viewed in the light most favorable to Shakka, the evidence cannot support a finding that these defendants were deliberately indifferent to a serious medical need.[3]

██ First, there is no evidence, either direct or circumstantial, to suggest that Warden Smith or Chief of Security Purnell had any knowledge that Shakka was deprived of his wheelchair;[4] accordingly, there is no evidence that they knew of and deliberately ignored Shakka's medical need which could support a finding of deliberate indifference.[5] *Farmer*, —— U.S. at ——, 114 S.Ct. at 1979. Further, it is undisputed that prison psychologist Fuhrmaneck, who is not a defendant, instructed that Shakka's wheelchair be removed temporarily for Shakka's own protection and the protection of others. Shakka does not challenge the assertions of prison officials that the remaining defendants— Byrnes, Hutchins, and Wells—lacked the authority to provide the wheelchair to Shakka in contravention of Fuhrmaneck's orders. And, if these prison officials had provided the wheelchair to Shakka in contravention of Fuhrmaneck's instructions, they might have incurred liability for interfering with Shak-

ka's treatment. *Cf. Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir.1990) (stating that supervisory prison officials are entitled to rely on professional judgment of trained medical personnel and may be found to have been deliberately indifferent by intentionally interfering with a prisoner's medical treatment ordered by such personnel).

On this record, we hold that a reasonable jury could not conclude that these correctional officers exhibited deliberate indifference to Shakka's medical needs by failing to return his wheelchair to him. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("[I]f the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party," summary judgment is appropriate.). Thus, the district court properly granted summary judgment in favor of the prison officials on Shakka's claim that the temporary deprivation of his wheelchair constituted deliberate indifference to a serious medical need.

### IV.

Shakka next claims that preventing him from showering for three days after having human excrement thrown onto him constituted cruel and unusual punishment. In support of the objective component of this claim, Shakka acknowledges that he failed to present evidence that could support a finding that he suffered significant physical or emotional injury as a result of having been denied a shower for three days. *See Strickler*, 989 F.2d at 1381. Instead, he argues that he is entitled to a presumption of injury or to proceed under a theory of likely future harm.

---

**3.** We do not address the objective component of the Eighth Amendment analysis because it appears that the prison officials have conceded for purposes of this appeal that the evidence is sufficient to create a question of fact on this issue.

**4.** Moreover, Shakka did not present any facts to support a finding that Smith and Purnell are liable in a supervisory capacity. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 67, 130 L.Ed.2d 24 *and* —— U.S. ——, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994); *Miltier v. Beorn*, 896 F.2d 848, 854–55 (4th Cir.1990).

**5.** The record does contain three memoranda that were either addressed to, or that purported to copy, Smith and Purnell, which reported on the disturbance Shakka caused and on the actions taken to restrain him that were ordered by Fuhrmaneck. J.A. 36, 45, 47. Although these memoranda are dated September 20, 1993, there is no evidence that Smith or Purnell received or reviewed the memoranda before the wheelchair was returned to Shakka the following morning. And, the timing of the events on September 20th prevents us from reasonably inferring that they did.

Shakka maintains that the deprivation of a shower for three days was, under the circumstances, a "palpable deprivation of the minimal requirements of civilized existence [for] which an inference of serious injury [would] be reasonable." *Id.* at 1381–82. We disagree. Although we assume for purposes of evaluating the appropriateness of summary judgment that he was denied a shower for three days, Shakka acknowledges that he was provided with water and cleaning materials with which to clean himself and his cell immediately after informing prison officials of the assault. While Shakka may have preferred a shower, we cannot say that he was deprived of the minimal civilized measures of human necessities in such a palpable way that injury should be inferred.

Further, Shakka correctly notes that the Eighth Amendment provides protection against conditions that have not resulted in past injury, but are reasonably likely to cause serious harm in the future. *See Helling,* —— U.S. at ——, 113 S.Ct. at 2482. He contends that the health risks posed by human excrement are so well recognized that it is obvious that having been denied a shower for three days, he is likely to suffer serious illness. His argument must fail, however, because he presented no evidence that having been denied a shower for three days posed a significant risk of future serious harm. *See id.* (noting that to prove the objective component of an Eighth Amendment conditions-of-confinement claim based on exposure to environmental tobacco smoke (ETS), plaintiff must show that levels of ETS to which he was exposed created an unreasonable risk of damage to his future health). Because Shakka failed to present sufficient evidence to raise a genuine issue of material fact concerning the objective component of this Eighth Amendment claim, summary judgment was proper on this allegation as well.

## V.

For the foregoing reasons, we conclude that the district court properly granted summary judgment in favor of the prison officials. Accordingly, we affirm.

*AFFIRMED.*