**CEM CORPORATION, Plaintiff,**

v.

**PERSONAL CHEMISTRY AB, Defendant.**

**No. 3:01CV225–MU.**

United States District Court,
W.D. North Carolina.
Charlotte Division.

March 7, 2002.

---

## ORDER

MULLEN, Chief Judge.

This matter is before the court upon Defendant Personal Chemistry AB's Motion to Dismiss pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. This Order will only address Defendant's Motion to Dismiss for lack of personal jurisdiction. In support of this motion, the Defendant has submitted the affidavit of Hans Johansson, President and CEO of Personal Chemistry AB.

## FACTS

Defendant Personal Chemistry AB ("PC") is a Swedish corporation with its principal place of business in Uppsala, Sweden. PC is not and has never been registered to do business in North Carolina, and does not do business in North Carolina. PC has no employees, offices, telephone listings or mailing addresses in North Carolina and owns no property in North Carolina.

Plaintiff CEM Corporation ("CEM"), a North Carolina corporation, filed suit against PC in Sweden in December of 2000 alleging infringement of a European patent. All allegations of infringing conduct

made in the Swedish suit involve conduct in Sweden. In January of 2001, an employee of PC, an employee of a PC affiliate, and PC's outside counsel traveled to North Carolina to discuss settlement of the Swedish patent infringement suit with CEM. Following the meeting, PC's outside counsel held several telephone conversations with a CEM representative regarding settlement and faxed an agreement-in-principle to CEM's President and CEO in North Carolina. The agreement-in-principle provided for the dismissal of the Swedish litigation and a license to PC to the European patent-in-suit in Sweden as well as another European patent for a one-time payment of $700,000 to CEM. PC's counsel later faxed a letter to CEM's president informing him that PC's Board of Directors had not approved the agreement-in-principle and thus PC was not bound by it. CEM then filed this lawsuit against PC for breach of settlement contract, intentional and negligent misrepresentation, and unfair and deceptive trade practices.

## DISCUSSION

Where, as here, the court rules on a 12(b)(2) motion relying on the Complaint, briefs, and affidavits alone, without conducting an evidentiary hearing, the burden is on the plaintiff to make a prima facie showing that personal jurisdiction exists. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989). Moreover, all relevant pleading allegations must be construed in the light most favorable to the plaintiff. *Id.*

To meet its burden, CEM must satisfy a two-step inquiry. First, CEM must show that the North Carolina long-arm statute confers personal jurisdiction. Second, CEM must show that the exercise of personal jurisdiction over PC would not violate the requirements of the Due Process clause of the Fourteenth Amendment. *See Mylan Laboratories, Inc. v. Akzo, N.V.*, 2

F.3d 56, 60 (4th Cir.1993). The North Carolina Supreme Court has liberally construed the North Carolina long-arm statute to extend the full jurisdictional powers permissible under federal Due Process. *Vishay Intertechnology, Inc. v. Delta International Corp.*, 696 F.2d 1062, 1065 (4th Cir.1982). Thus, the two-step inquiry merges into a single issue of whether PC has the requisite minimum contacts with North Carolina to satisfy due process. The Supreme Court has fashioned two tests for determining whether a defendant's contacts with the forum state are sufficient to confer personal jurisdiction. If the cause of action is unrelated to the defendant's activities in the forum state, plaintiff must prove that the contacts are "continuous and systematic" to support the exercise of "general jurisdiction" over the defendant. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). If the cause of action is related to or arises out of defendant's actions within the state, the plaintiff can establish more limited "specific jurisdiction" by proving that:

> the defendant has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state; and (2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and substantial justice, taking into account such factors as (a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies."

*Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945–46 (4th Cir.1994).

CEM contends that PC's contacts in North Carolina are sufficient to confer both general and specific jurisdiction. The court will first address the issue of whether it may exercise general jurisdiction over PC.

■ In support of its position that PC has continuous and systematic contacts with this forum sufficient to exercise general jurisdiction, CEM has set forth a list of alleged advertising, solicitation and de minimus sales activities which it asserts are attributable to PC. First, CEM shows that PC has advertised its products in several nationally distributed publications such as Chemical & Engineering News and Modern Drug Discovery. CEM subscribes to and receives these publications at its North Carolina facility, although these publications are not specifically targeted to North Carolina or North Carolina residents. In addition, PC has participated in various national trade shows. While these shows may have been attended by some North Carolina companies, the shows were not specifically targeted to North Carolina companies. The Fourth Circuit has held that advertisements and solicitations not targeted to the forum, but made in nationally available publications that subsequently find their way into the forum, are entirely insufficient to support a finding of general jurisdiction, even when coupled with de minimus sales in the forum. *ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 623–24 (4th Cir.1997); *Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1199–1200 (4th Cir.1993); *Ratliff v. Cooper Labs., Inc.,* 444 F.2d 745, 748 (4th Cir.1971).

■ CEM also shows that PC has advertised and continues to advertise on a website accessible in North Carolina. Again, the website is not specifically targeted to North Carolina residents. The court finds that PC's passive advertisement on a website accessible in North Carolina does not support general personal jurisdiction over PC in North Carolina. *Jim Myers & Son, Inc. v. Motion Indus., Inc.,* 140 F.Supp.2d 595, 600 (W.D.N.C. 2001) ("[P]assive website, which is not used to make sales and which is not related in any way to the contracts or events giving rise to [the] action, does not provide a basis for personal jurisdiction.").

■ CEM also contends that PC has solicited sales from at least one CEM employee in response to a request made by the employee at the website mentioned above. However, the Fourth Circuit has held that "[i]t is firmly established that 'the unilateral activity of those who claim some relationship·with a nonresident defendant cannot satisfy the requirement of contact with the forum state.' Jurisdiction cannot be manufactured by the conduct of others." *Chung v. NANA Dev. Corp.,* 783 F.2d 1124, 1127–28 (4th Cir.1986).

■ Lastly, CEM has alleged that PC presented at least one seminar on its products in North Carolina, offered a product for sale to a corporation located in North Carolina, and has sold a product to a North Carolina corporation. PC contends that these activities are attributable to Personal Chemistry, Inc., a United States subsidiary of PC, with its principal place of business in Boston. Even taking CEM's allegations as true, however, these de minimus sales and meeting activities are insufficient to support the court's exercise of general jurisdiction. *See Ratliff,* 444 F.2d 745 (advertising and employing salesmen in the forum to solicit orders not enough to exercise general jurisdiction); *Nichols,* 991 F.2d 1195 (employing sales representatives and holding district, regional and national meetings in the forum, as well as sales and purchasing activity in the forum state not enough to confer general personal jurisdic-

tion on defendant); *ESAB*, 126 F.3d 617 (no general personal jurisdiction despite defendant making sales to 26 customers in the forum state and purchasing parts from a supplier in the forum.) Moreover, the Fourth Circuit has described the threshold level of minimum contacts required for general jurisdiction as "significantly higher than for specific jurisdiction" and as "very substantial, indeed." *ESAB*, 126 F.3d at 623–24 (quoting 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1067, at 295–98 (1987)). Thus, the court finds that the contacts alleged by CEM, untargeted advertising and solicitation in national trade journals and at national industry trade shows and via a passive website, responding to requests initiated by CEM, and de minimus sales activities, are wholly insufficient to support the exercise of general personal jurisdiction.

 Having determined that the exercise of general personal jurisdiction over PC would be improper, the court now turns to the issue of whether PC's contacts with North Carolina are sufficient to support the exercise of specific personal jurisdiction. CEM relies upon the contract PC entered into with CEM to establish specific jurisdiction.[1] The Fourth Circuit has held that "[a] contract with a resident of a forum state does *not* automatically constitute sufficient contacts to support the forum's assertion of specific jurisdiction, even where the dispute arises from the contract." (emphasis in original) *Le Bleu Corp. v. Standard Capital Group, Inc.*, 2001 WL 672066 * 2 (4th Cir. June 15, 2001). Rather, the contract's prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' course of dealing must evidence a "substantial connection" between the contract and the forum in order for personal jurisdiction to properly lie. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Le Bleu*, 2001 WL 672066 at * 2.

Here, the agreement-in-principle bears little, if any, connection to the state of North Carolina. Its subject is a patent infringement suit filed by CEM in Sweden involving a European patent. All allegations of infringing conduct made in the Swedish lawsuit involve conduct in Sweden and there are no allegations in the Swedish patent suit that implicate North Carolina in any way. While the agreement-in-principle does provide for a one-time payment to CEM in North Carolina of $700,000, it does not appear to contemplate any ongoing performance or continued course of dealing between PC and CEM in North Carolina. The fact that PC traveled to North Carolina to negotiate the contract and made several telephone calls and faxes to North Carolina during negotiations does not create specific personal jurisdiction in the absence of a contract that is substantially connected to this state. *See Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 452 (4th Cir.2000) (No personal jurisdiction over defendant where contract called for performance mainly outside the forum, even though some acts required of and performed by defendant necessitated its contact with the forum).

The Fourth Circuit recently found no specific personal jurisdiction in a case where the defendant's contacts with North Carolina were nearly identical to PC's contacts herein. In *Le Bleu*, the California defendant was retained by Le Bleu as a financial advisor and the parties executed

---

**1.** PC disputes that the agreement-in-principle constitutes a contract. However, for purposes of the present analysis, the court will assume that it does.

a retainer contract. After a disagreement arose, Le Bleu, a North Carolina corporation, filed suit against the defendant in North Carolina. Despite the fact that the parties had exchanged some mail and telephone calls, that two visits were made to North Carolina by defendant's employees, that a payment was mailed from North Carolina, and that the contract was signed in North Carolina, the district court found there was no specific jurisdiction over the defendant. The court concluded that Le Bleu had shown only a "negligible connection with North Carolina." *Le Bleu*, 2001 WL 672066 at *2. The Fourth Circuit affirmed.

In support of its argument that PC's contacts with the forum are sufficient to exercise specific personal jurisdiction, CEM relies heavily on *McGee v. International Life Ins.Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), where the Supreme Court found personal jurisdiction to exist in California over a non-resident defendant insurer based upon a single contract of insurance entered into with a resident of that state. However, *McGee* is distinguishable from the present case in that the Court found jurisdiction only after holding that "the suit was based on a contract which had a substantial connection with [California]." *McGee*, 355 U.S. at 223, 78 S.Ct. 199. The Court's conclusion was based in part on the fact that premium payments were regularly sent from California until the insured's death. *Id.* Moreover, the court noted that "California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the

insurance company to a distant State in order to hold it legally accountable." *Id.* The concerns addressed by the *McGee* court simply are not present in this case.[2] As outlined above, this court finds that the contract at issue bears no substantial relationship to this forum.

CEM also cites other cases where it alleges that specific jurisdiction was found based upon contacts less numerous or substantial than the contacts herein, including *Econo Lodges Int'l, Inc. v. Peck*, 1993 WL 369262, 1993 U.S.App. LEXIS 24478 (4th Cir.1993); *English & Smith v. Metzger*, 901 F.2d 36 (4th Cir.1990); *Peanut Corp. of America v. Hollywood Brands, Inc.*, 696 F.2d 311 (4th Cir.1982); *Jim Myers & Son, Inc. v. Motion Indus., Inc.*, 140 F.Supp.2d 595 (W.D.N.C.2001); *Cornerstone Orthopedic Hospital v. Marquez*, 944 F.Supp. 451 (W.D.N.C.1996); and *Capstar Corp. v. Pristine Indus., Inc.*, 768 F.Supp. 518 (W.D.N.C.1991). Each of these cases, however, is distinguishable from the instant matter in that all involved some time of continuing relationship or course of dealing between the parties or between the defendant and the forum state. The contract in this case, as noted above, does not contemplate any ongoing performance or continuing course of dealing between PC and CEM. The contract called for a fully paid up license under the patent-in-suit in Sweden and the additional European patent for the entire life of the patents. Thus, PC would owe no continuing duty to pay royalties or to offer an accounting of products sold incident to a royalty calculation.

Because the court finds that CEM has failed to meet its burden to show that PC created a substantial connection to North

---

**2.** CEM also cites *August v. HBA Life Ins. Co.*, 734 F.2d 168 (4th Cir.1984) in which the Fourth Circuit, following *McGee*, found personal jurisdiction to exist over a non-resident insurance company. *August* is distinguishable from the present case for the same reasons that *McGee* is.

Carolina by action purposefully directed toward North Carolina or otherwise invoked the benefits and protections of the laws of the state, the court will grant PC's motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction.[3]

IT IS THEREFORE ORDERED that PC's Motion to Dismiss for lack of personal jurisdiction is hereby GRANTED.

**3.** Since the court has determined that PC does not fall within the first prong of the *Lesnick* jurisdictional analysis, the court will not discuss whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. However, the court does note that CEM would be hard pressed to meet the second prong of the *Lesnick* test given the fact that its own actions in suing PC in Sweden forced PC to negotiate with CEM, a North Carolina resident, to settle the litigation.