**Loretta MOSELEY, Plaintiff,**

v.

**FILLMORE COMPANY, LTD., Yusa Noriyuki, and Ed Roman Enterprises, Inc., Defendants.**

**Civil Case No. 1:09cv221.**

United States District Court, W.D. North Carolina, Asheville Division.

July 16, 2010.

Peter M. Lukevich, Apex Juris, PLLC, Seattle, WA, Raymond E. Owens, Jr., K & L Gates LLP, Charlotte, NC, for Plaintiff.

Sean David Soboleski, Law Office of Sean D. Soboleski, Asheville, NC, Brent Merrill Davis, Ronald S. Bienstock, Bienstock & Michael, P.C., Hackensack, NJ, for Defendants.

## *ORDER*

MARTIN REIDINGER, District Judge.

**THIS MATTER** is before the Court on the following:

1. Defendant, Ed Roman Enterprises, Inc.'s Notice of Motion and Motion to Dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(2), (3) and (5), or in the alternative, to Transfer this Action to the District of Nevada, pursuant to 28 U.S.C. § 1404(a) [Doc. 14]; and

2. Defendants, Fillmore Company, Ltd. and Yusa Noriyuki's Notice of Motion and Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R.Civ.P. 12(b)(2), (3) and (5) [Doc. 28; Doc. 41].

Pursuant to 28 U.S.C. § 636(b) and the standing Orders of Designation of this Court, United States Magistrate Judge Dennis L. Howell was designated to consider these motions and to submit recommendations for their disposition. On June 1, 2010, the Magistrate Judge filed his Memorandum and Recommendation in which he recommended that the motions of Defendants Fillmore Company, Ltd. (Fillmore) and Yusa Noriyuki (Noriyuki) be granted and that this action be dismissed without prejudice as to those defendants for lack of personal jurisdiction. [Doc. 45]. In view of that recommendation, the Magistrate Judge recommended that all other claims in the action be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 19(b) because the joinder of Fillmore and Noriyuki as necessary parties is not feasible. [*Id.*]. Finally, he recommended that Defendant Ed Roman Enterprises, Inc.'s (Roman) motion to dismiss be denied without prejudice as moot in view of the other recommended rulings. [*Id.*].

## PROCEDURAL HISTORY & FACTUAL BACKGROUND

On June 15, 2009, the Plaintiff initiated this action against the Defendants based on federal question jurisdiction alleging Lanham Act violations and supplemental state law claims. [Doc. 1]. In the Complaint, the Plaintiff alleged that Defendant Fillmore is a Japanese corporation with its principal place of business in Tokyo and that Noriyuki, its president, is a citizen of Japan. [*Id.*, at 2]. It is alleged that Roman is a Nevada corporation with its principal place of business in Las Vegas, Nevada. [*Id.*, at 2]. Jurisdiction is based on the general allegation that the Defendants conduct business in North Carolina. [*Id.*].

Plaintiff claims that Noriyuki falsely or fraudulently obtained federal trademark registrations for guitars, guitar components and amplifiers. [*Id.*]. Noriyuki allegedly transferred those registrations to Defendant Fillmore which manufactures and sells the guitars and related products bearing the allegedly false marks. [*Id.*]. Defendant Roman is Fillmore's sole distributor of the goods in the United States. [*Id.*, at 5–7]. The goods are alleged to infringe the Plaintiff's marks. [*Id.*]. There are no allegations in the Complaint that either Fillmore or Noriyuki have any connection to the United States, and in particular, to North Carolina, except by virtue of a business relationship with Roman. [*Id.*, at 2–7]. There are no specific allegations that Roman sells the goods in North Carolina, only a general claim that the goods are marketed and sold in the United States, primarily through a website, www.edroman.com. [*Id.*].

On December 2, 2009, Defendant Roman moved to dismiss the action for lack of personal jurisdiction. [Doc. 14]. In response, the Plaintiff moved for leave to conduct limited discovery on the issue of Roman's contacts with North Carolina. [Doc. 18]. The Magistrate Judge granted that motion and allowed limited discovery. [Doc. 24].

On March 26, 2010, Defendants Fillmore and Noriyuki also moved to dismiss for lack of personal jurisdiction. [Doc. 28]. In support of that motion, Noriyuki filed an affidavit in which he stated that he is a citizen and resident of Japan and does not do any business in North Carolina and that he is the president of Fillmore, a Japanese company which does not do any business in North Carolina. [Doc. 28–1]. Noriyuki further stated that he and Fillmore (1) do not have any presence of any type in North Carolina; (2) do not direct any advertising toward North Carolina customers or citizens; (3) do not own property in North Carolina; and (4) have never been in North Carolina. [*Id.*]. It was established that although Roman operates a website, no purchase of any product may be accomplished via that site and a telephone call to the Roman offices in Nevada is required to place an order. [Doc. 42–1].

On June 1, 2010, the Magistrate Judge filed his Memorandum and Recommendation. [Doc. 45]. Four days before the objections were due, Plaintiff's attorneys moved for leave to withdraw. [Doc. 46]. On June 22, 2010, the Court denied counsel's motion to withdraw without prejudice and required counsel to either file objections to the Memorandum and Recommendation or a statement that the Plaintiff did not wish to file objections. [Doc. 48, at 6–7]. On July 12, 2010, counsel filed objections. [Doc. 49]. Counsel renewed the motion for leave to withdraw on July 13, 2010 and that motion is considered separately. [Doc. 51].

## STANDARD OF REVIEW

The Defendants have not filed any objections to the Magistrate Judge's recommendations. The Plaintiff has captioned

its pleading as objections, but, as discussed *infra,* has conceded that the Magistrate Judge's Memorandum and Recommendation is accurate.

A district court reviews specific objections to a Memorandum and Recommendation under a *de novo* standard. 28 U.S.C. § 636(b). "Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." *Battle v. United States Parole Commission,* 834 F.2d 419, 421 (5th Cir.1987), *overruled on other grounds Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415(5th Cir.1996).

■ To the extent that a party asserts claims in the objections which were not asserted in support of or in opposition to the motion, *de novo* review is not warranted. *Price v. Dixon,* 961 F.Supp. 894 (E.D.N.C.1997)(claims cannot be raised for the first time in objections to a memorandum and recommendation); *Wells v. Shriners Hospital,* 109 F.3d 198, 200 (4th Cir.1997)(boilerplate objections will not avoid the consequences of failing to object altogether). This Court therefore does not conduct a *de novo* review of those portions of the Memorandum and Recommendation to which non-specific objections have been filed.

■ "When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.,* 334 F.3d 390, 396 (4th Cir.2003). At this stage of the litigation, the Plaintiff must establish a *prima facie* case for the exercise of personal jurisdiction by pointing to relevant evidence and affidavits. *New Wellington Financial Corp. v. Flagship Resort Development Corp.,* 416 F.3d 290, 294 (4th Cir.2005). "A federal district court may only exercise

personal jurisdiction over a foreign [resident] if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." *Consulting Eng'rs Corp. v. Geometric Ltd.,* 561 F.3d 273, 277 (4th Cir.2009). In addition, maintaining the lawsuit in this forum must be consistent with the traditional notions of fair play embodied in the due process clause. *Id.,* at 278.

The Plaintiff sought to establish jurisdiction alternatively based on Federal Rule of Civil Procedure 4(k)(2). That Rule provides that where a claim arises under federal law, serving a summons on a defendant will establish personal jurisdiction if the defendant is not subject to jurisdiction in any state court and exercising jurisdiction would be consistent with the United States Constitution and laws. *Saudi v. Northrop Grumman Corp.,* 427 F.3d 271, 275 (4th Cir.2005), *certiorari denied* 549 U.S. 820, 127 S.Ct. 115, 166 L.Ed.2d 34 (2006) (all three requirements must be met).

Section 1406(a) of Title 28 provides that a district court in which a case is filed laying venue in the wrong district "*shall dismiss,* or if it be in the interest of justice, transfer such case to any district ... in which it could have been brought." (emphasis provided). Before the Magistrate Judge, the Plaintiff argued that transfer would not be appropriate.

## DISCUSSION

The Magistrate Judge found that the Plaintiff did not carry her burden to show a *prima facie* case of personal jurisdiction over Defendants Fillmore and Noriyuki in North Carolina.

[T]he Complaint as well as the evidentiary material submitted outside the initial

pleadings reveals that [Fillmore and Noriyuki] have had no contacts with North Carolina. Instead, it appears that plaintiff is relying on the contacts that these defendants' distributor, [Roman], has had with the forum state, which has averred that it has sold no allegedly infringing guitars or other allegedly infringing goods to residents of North Carolina.

[Doc. 45, at 10]. The Magistrate Judge also considered and rejected the Plaintiff's argument that the maintenance by Roman of a website constituted sufficient contacts for personal jurisdiction over Fillmore and Noriyuki. [*Id.*, at 10–16].

The Plaintiff's alternative argument for personal jurisdiction pursuant to Rule 4(k)(2) was rejected because the Defendants conceded that personal jurisdiction over them existed in forum states other than North Carolina. [Doc. 42, at 7]; *Tetrev v. Pride Intern., Inc.*, 465 F.Supp.2d 555, 562 (D.S.C.2006) (courts in the Fourth Circuit have held that evidence that a defendant has contacts with another state prevents a plaintiff from satisfying the second element even without a concession). Because all three requirements of Rule 4(k)(2) were not met, that rule did not provide a basis for jurisdiction. *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 215 (4th Cir.2002), *certiorari denied* 537 U.S. 822, 123 S.Ct. 101, 154 L.Ed.2d 30 (2002). "In fact, [the Plaintiff] continue[d] to assert that personal jurisdiction over [Fillmore and Noriyuki] is proper in [North Carolina]," a position inconsistent with the argument for applying Rule 4(k)(2). *Id.*

The Magistrate Judge then noted that the Plaintiff's Complaint is based on allegations that Noriyuki obtained false trademark registrations which are used by Fillmore to manufacture products that infringe on the Plaintiff's marks. [Doc.

45, at 17]. The infringing products are marketed and sold by Roman. [*Id.*]. Thus, in order to find any liability on the part of Roman, the Plaintiff must first obtain relief against Noriyuki and Fillmore. [*Id.*]. The Magistrate Judge therefore concluded that they are necessary parties whose joinder in this lawsuit is not feasible. [*Id.*, citing Fed.R.Civ.P. 19(b) ]. He thus recommended dismissal of the entire action without prejudice, a recommendation which does not leave the Plaintiff without the possibility of her day in court in the proper forum. [*Id.*].

The Magistrate Judge recommended the denial of Roman's motion to dismiss, and its alternative motion to transfer venue, as moot in light of the above recommended rulings. In addition, because these recommended rulings would dispose of all issues, the Magistrate Judge did not consider the motions pursuant to Rule 12(b)(3), (4) & (5).

In her "objection," the Plaintiff states:

Records of [Roman] product sales in North Carolina were solely in the custody and control of [Roman]. The convenient disappearance of any and all [Roman] sales records pre-dating 2008, makes it practically impossible for Plaintiff to dispute the self-serving allegations of Roman's affidavit. Therefore, although the Plaintiff is disappointed in the Recommendation's willingness to assume lack of personal jurisdiction as a result of [Roman's] alleged loss of all its sales data prior to 2008, Plaintiff cannot produce evidence to refute the Recommendation and its findings as to this Court's [lack of] jurisdiction over the Japanese Defendants [Fillmore and Noriyuki].

[Doc. 49, at 4]. The Court finds this is not a true objection but instead a concession by the Plaintiff that the Rule 12(b)(2) motion of Fillmore and Noriyuki should be

granted. No other objections to any portion of the Memorandum and Recommendation are made.

In further support of the Plaintiff's concession, she requests that the action be transferred to the District of Nevada rather than dismissed.

> Although neither the Plaintiff nor the Japanese Defendants moved for transfer of the action, [Roman] has moved the Court for transfer of the action in the [Roman] motions. Therefore, although Plaintiff initially opposed [Roman's] motion to transfer this action, she now respectfully requests this Court's reconsideration of [Roman's] request to transfer in the interests of justice and economy of judicial resources.

[Doc. 49, at 5].

The Court notes, however, that Plaintiff has not shown that Nevada would be an appropriate forum in which to assert personal jurisdiction over Fillmore and Noriyuki. Although the Magistrate Judge commented that jurisdiction over those defendants "may well" exist in Nevada, he did not make such a finding. [Doc. 45, at 17]. The Plaintiff has failed to show that personal jurisdiction over these defendants exists in Nevada and therefore transfer to that District is inappropriate. *Saudi*, 427 F.3d at 277 (transfer is only appropriate if the movant shows that personal jurisdiction exists in the alternative forum); *accord, In re Carefirst of Maryland, Inc.*, 305 F.3d 253, 255–56(4th Cir.2002). The "mere assertion of potential jurisdiction" is insufficient. *Saudi*, 427 F.3d at 277.

Before the Magistrate Judge the Plaintiff strongly opposed transfer of the action to Nevada. [Doc. 25, at 12–15]. The Magistrate Judge recommended that Roman's motion be denied in its entirety, including the alternative motion to transfer. Roman has not filed any objections to the recommendation that its motion be denied. Nor has the Plaintiff filed an objection to that recommendation; instead, the Plaintiff asks that the District Court "reconsider" Roman's motion. *Saudi*, 427 F.3d at 277. (noting the plaintiff never filed a motion to transfer and only raised the issue during a hearing). This does not rise to the level of an objection and the Court need not address an issue raised by the Plaintiff for the first time before this Court. *Sandvik Intellectual Property AB v. Kennametal, Inc.*, 2010 WL 1924504 (W.D.N.C.2010), *citing Price v. Dixon*, 961 F.Supp. at 894. (claims cannot be raised for the first time in objections to a memorandum and recommendation). "[B]y precluding ... review of any issue not contained in objections, [the waiver rule] prevents a litigant from 'sandbagging' the district judge by failing to object and then appealing." *Wells v. Shriners Hosp.*, 109 F.3d 198, 200 (4th Cir.1997), *quoting Thomas v. Arn*, 474 U.S. 140, 147, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

The Court therefore finds that the Plaintiff has not filed true objections but instead has conceded that the motion to dismiss of Fillmore and Noriyuki for lack of personal jurisdiction should be granted. The Plaintiff also has not objected to the Magistrate Judge's recommendation that Roman's motion to dismiss be denied. The suggestion contained within the purported objections that this Court "reconsider" Roman's motion to transfer is not a true objection. Thus, this Court need " 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir.2005), *certiorari denied* 546 U.S. 1091, 126 S.Ct. 1033, 163 L.Ed.2d 855 (2006). Having done so, the Court adopts the recommendation.

## ORDER

**IT IS, THEREFORE, ORDERED** as follows:

1. Defendants, Fillmore Company, Ltd. and Yusa Noriyuki's Notice of Motion and Motion to Dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(2), (3) and (5) [Doc. 28; Doc. 41] is hereby **GRANTED** as to the motion to dismiss pursuant to Rule 12(b)(2) and **DENIED** as moot as to the motions to dismiss pursuant to Rule 12(b)(3) & (5) and this action against these Defendants is hereby **DISMISSED WITHOUT PREJUDICE.**

2. This action is hereby **DISMISSED WITHOUT PREJUDICE** pursuant to Federal Rule of Civil Procedure 19(b).

3. Defendant, Ed Roman Enterprises, Inc.'s Notice of Motion and Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R.Civ.P. 12(b)(2), (3) and (5), or in the alternative, to Transfer this Action to the District of Nevada, pursuant to 28 U.S.C. § 1404(a) [Doc. 14] is hereby **DENIED WITHOUT PREJUDICE** as moot.

## MEMORANDUM AND RECOMMENDATION

DENNIS L. HOWELL, United States Magistrate Judge.

**THIS MATTER** is before the court upon defendants Fillmore Company, Ltd.'s and Yusa Noriyuki's (hereinafter the "foreign defendants" or "defendants") Motion to Dismiss (# 26 & # 41) and EREI's Motion to Dismiss (# 14). Having carefully considered the foreign defendants' Motion

to Dismiss and reviewed the pleadings, the court enters the following findings, conclusions, and Recommendation that the motion be granted.

## FINDINGS AND CONCLUSIONS

### I. Background

Starting in the 1950s, plaintiff's late husband, Semie Moseley, built distinctive guitars that became icons of popular culture in the 1960s when they were used by one of the most successful instrumental groups of all time, *The Ventures.* Complaint, at ¶¶ 11 & 14.[1] Not only did Semie Moseley's guitars have a unique look, they produced a singular sound on *The Venture's* hit concept album, *The Ventures in Space* (1963).[2] Despite the passage of some 50 years, *The Ventures* continue to tour, being especially popular in Japan.[3]

Prior to the popularization of his guitars in the 1960s, Semie Moseley worked out of his garage making three guitars a month under the trademark "MOSRITE" and other marks, including the mark "VIBRA-MUTE," which he applied to guitars having a system he designed for muting the strings. Compl., at ¶ 12. Since 1952, marks used by Semie Moseley in the production of his guitars (as well as other products) included MOSRITE, M MOS-RITE & Design, VIBRAMUTE, MOSE-

---

**1.** The court has referenced certain material herein that is outside the pleadings and the additional materials submitted by counsel inasmuch as the instant motion is jurisdictional. Where the court has referenced materials outside those submitted by the parties, it has done so for the limited purpose of providing context. *See* http://en.wikipedia.org/wiki/The_Ventures# Discography ("the group remains the best selling instrumental rock group of all time.") (Downloaded May 17, 2010); *see also* http://www.theventures.com.

**2.** *See* http://en.wikipedia.org/wiki/The_Ventures# Discography ("The band adopted these [Mosrite] guitars (which included a bass model) and first used them on The Ventures in Space (1963), one of their most influential albums because of the unique, unworldly guitar sounds it contained.")

**3.** *See* http://en.wikipedia.org/wiki/The_Ventures# Discography ("The Ventures are still the most popular American rock group in Japan, the world's second largest record market.")

LEY, and SEMIE MOSELEY (hereinafter the "MOSELEY" marks).

After Semie Moseley's death in 1992, plaintiff became the testamentary successor in interest to Semie Moseley's marks, which she asserts have been in continuous use since 1952. Compl., at ¶¶ 2, 10, 15, & 16. Plaintiff contends that the foreign defendants are the registrant and owners of federal trademark registrations, to wit, the word mark VIBRAMUTE and design and word mark M MOSRITE, which she contends they obtained in violation of Section 38 of the *Lanham Act*, 15 U.S.C. § 1120. *Id.*, at ¶ 8. She contends that the injury for such violations "takes place in North Carolina." [4] Specifically, plaintiff contends that the foreign defendants made false applications to the United States Patent and Trademark Office, *id.*, at ¶ 27, when in 1998 they filed applications for registration of the word mark VIBRAMUTE and the design and word mark M MOSRITE, hereinafter the "alleged infringing marks." *Id.*, at ¶¶ 25–26. Plaintiff contends that these defendants manufacture, market, sell, and distribute guitars and related products bearing the MOSELEY marks, hereinafter the "infringing goods." *Id.*, at ¶ 33.

Plaintiff further contends that defendant Ed Roman Enterprises, Inc. (hereinafter "EREI") is the foreign defendants' exclusive distributor of the allegedly infringing goods in North America and South America. *Id.*, at ¶ 35. Further, plaintiff contends that such allegedly infringing goods are sold in direct competition with MOSELEY goods. *Id.*, at ¶ 37. Plaintiff contends that defendants' use of marks that are identical or substantially similar to the MOSELEY marks is likely to cause confusion and "dilution by blurring" and "dilution by tarnishment." *Id.*, at ¶¶ 43–44.

Based on such contentions (and others), plaintiff has asserted claims for: (1) False Advertising and False Designation of Origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) Dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); (3) False or Fraudulent Trademark Registration under Section 38 of the Lanham Act, 15 U.S.C. § 1120; (4) Common Law Trademark Infringement and Unfair Competition under North Carolina law; (5) Unfair or Deceptive Trade Practices under Chapter 75–1.1 *et seq.*, N.C.Gen.Stat.; (6) Preliminary and Permanent Injunction; and (7) Cancellation of the Yusa Registrations under Section 37 of the Lanham Act, 15 U.S.C. § 1119. *Id.*, at ¶¶ 49–65.

The foreign defendants have moved to dismiss the Complaint based on a lack of personal jurisdiction over them, Fed. R.Civ.P. 12(b)(2), for improper venue, Fed.R.Civ.P. 12(b)(3), and for insufficient service of process, Fed.R.Civ.P. 12(b)(5). The thrust of their argument is that they have had absolutely no contacts with the forum state inasmuch as they have done no business in this state and, further, that their distributor EREI has averred that it has sold absolutely no allegedly infringing products in North Carolina.

## II. Applicable Standards

### A. Rule 12(b)(2) Standard

Rule 12(b)(2) provides for dismissal where the court lacks personal jurisdiction over a particular named defendant. In the Fourth Circuit, the standard for deciding a motion based on Rule 12(b)(2) was set forth in *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989), where it explained that a plaintiff has the burden to prove person-

---

**4.** Plaintiff has also asserted a number of claims supplemental to her federal trademark claims over which this court has original jurisdiction.

al jurisdiction by a preponderance of the evidence. When a factual dispute arises as to whether or not jurisdiction exists, the court may either conduct an evidentiary hearing or defer ruling on the matter until it receives evidence on the jurisdictional issue at trial. *Id.* When a court decides the issue on the record then before it, the court may consider "the motion papers, supporting legal memoranda, affidavits, other documents, and the relevant allegations of the complaint," and the burden is plaintiff's "to make a mere *prima facie* showing of jurisdiction to survive the jurisdictional challenge." *Clark v. Milam,* 830 F.Supp. 316, 319 (S.D.W.Va.1993) (citations omitted). A court must resolve factual disputes in favor of the party asserting jurisdiction for the limited purpose of the *prima facie* showing. *Bakker,* at 676. Such resolution must include construing all relevant pleadings in a light most favorable to the plaintiff, assume the credibility of any affiant, and drawing the most favorable inferences for the existence of jurisdiction. *Id.*

### B. Rule 12(b)(3)

In accordance with Rule 12(b)(3), a court may dismiss a complaint for improper venue or transfer venue to a court where it could have been brought. 28 U.S.C. § 1406(a).

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a). When considering a motion to dismiss for improper venue, a court must accept the facts alleged in the complaint as true and must draw all reasonable inferences in the plaintiff's favor.

*Micromuse, Inc. v. Aprisma Management Technologies, Inc.,* 2005 WL 1241924, *2 (S.D.N.Y.2005).[5]

### C. Rules 12(b)(4) & (5)

Where a motion to dismiss is filed based on insufficient process or insufficient service of process, affidavits and other materials outside the pleadings may be properly submitted and considered.

> [T]he party on whose behalf service is made has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law.

*Light v. Wolf,* 816 F.2d 746, 751 (D.C.Cir. 1987) (internal quotations omitted). Where the procedural requirements of sufficient process and service of process are not satisfied, a court lacks power to assert personal jurisdiction over a defendant. *Gorman v. Ameritrade Holding Corp.,* 293 F.3d 506, 514 (D.C.Cir.2002). Inasmuch as the sufficiency of process and service of process concern the court's jurisdiction, consideration of materials outside the pleadings, such as affidavits, is appropriate. *Dimet Proprietary, Limited v. Industrial Metal Protectives,* 109 F.Supp. 472 (D.Del.1952).

### III. Discussion

■ In this action, plaintiff asserts that this court has jurisdiction over the subject matter of the lawsuit inasmuch as her claims under the Lanham Act raise a federal question. Federal question jurisdiction exists pursuant to 28, United States Code, Sections 1331 and 1338; however, the Lanham Act does not separately provide for nationwide jurisdiction. Here, the foreign defendants contend that plaintiff

---

**5.** Due to limits of electronic case filing, a copy of such unpublished opinion is incorporated into the electronic record through reference to the Westlaw citation.

has overreached the law of the State of North Carolina, which determines the jurisdictional reach of a federal court in a Lanham Act case, in asserting personal jurisdiction over them. Specifically, the moving defendants contend that a federal court in North Carolina lacks personal jurisdiction over them as they have neither availed themselves of the protections of North Carolina law nor had any contacts within the forum state. Thus, the court is tasked with determining whether it may properly exercise personal jurisdiction over either of these two foreign defendants.[6]

Defendants argue that personal jurisdiction over them is not authorized by the North Carolina Long Arm Statute, N.C. Gen.Stat. § 1–75.4, and that the exercise of jurisdiction would not comport with due process. The undersigned has determined that a hearing will not aid the decision making process and will enter its recommendation on the well-reasoned briefs of respective counsel.[7] When personal jurisdiction is determined on the basis of briefs and the allegations in the Complaint without an evidentiary hearing, "the plaintiff bears the burden of making a *prima facie* showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Consulting Engineers, Inc. v. Geometric Limited,* 561 F.3d 273, 278 (4th Cir.2009) (*citing Combs v. Bakker, supra,* 676 (4th Cir.1989).)

■ In federal question actions based on a statute that does not provide for nationwide jurisdiction, a federal court exercises personal jurisdiction over a defendant in the manner consistent with state law. *ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 622 (4th Cir.1997); Fed. R.Civ.P. 4(k)(1)(A).

In considering defendants' Motion to Dismiss, analysis begins with the two-step approach furnished by the Court of Appeals for the Fourth Circuit in *English & Smith v. Metzger,* 901 F.2d 36, 38 (4th Cir.1990). First, the court must consider whether the forum state's long-arm statute authorizes personal jurisdiction. *Consulting Engineers, supra,* at 278. Second, if personal jurisdiction is authorized, the court next considers whether there are sufficient contacts with the forum state to meet the requirements of the Due Process Clause of the fourteenth amendment. *Id.* There are two categories into which personal jurisdiction falls: personal jurisdiction may be "general" or "specific." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 411, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). General personal jurisdiction will exist when a defendant has "continuous and systematic" contacts with the forum state. *Id.,* at 411 fn. 9, 104 S.Ct. 1868. If, however, general jurisdiction is lacking, plaintiff may then attempt to establish "specific" jurisdiction by showing that the claims asserted arose from or are related to defendants' alleged actions within the state. *Id.,* at fn. 8, 104 S.Ct. 1868.

A district court may exercise specific personal jurisdiction over a defendant only if the defendant has sufficient "minimum contacts" with the forum state. *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Where, as here, there are multiple defendants, plaintiff has the burden of establishing each defendant's contacts with the forum state; the court must then, in turn, assess such contacts individually. *Calder v. Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

---

**6.** It is undisputed that both the individual and corporate defendant are residents of Japan.

**7.** No hearing has been requested.

In this case, a fair reading of the Complaint as well as the evidentiary material submitted outside the initial pleadings reveals that the foreign defendants have had no contacts with North Carolina. Instead, it appears that plaintiff is relying on the contacts that these defendants' distributor, EREI, has had with the forum state, which has averred that it has sold no allegedly infringing guitars or other allegedly infringing goods to residents of North Carolina.[8] EREI also states that it maintains a website where potential customers can call into EREI in Nevada and place an order over the phone.

■ It is, however, well-settled that a defendant must himself have contact with the forum state in order to be subject to the personal jurisdiction of that state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The North Carolina Long Arm Statute authorizes the exercise of personal jurisdiction in twelve circumstances. N.C. Gen.Stat. § 1–75.4(1)–(12). Section 1–75.4(4) provides the provision most relevant to these circumstances:

(4) **Local Injury; Foreign Act.**—In any action . . . claiming injury to person or property within this State arising out of an act or omission outside this State by the defendant, provided in addition that at or about the time of the injury either:

a. Solicitation or services activities were carried on within this State by or on behalf of the defendant;

b. Products, materials or thing processed, serviced or manufactured by the defendant were used or consumed, within this State in the ordinary course of trade; or

c. Unsolicited bulk commercial electronic mail was sent into or within this State by the defendant using a computer, computer network, or the computer services of an electronic mail service provider in contravention of the authority granted by or in violation of the policies set by the electronic mail service provider. Transmission of commercial electronic mail from an organization to its members shall not be deemed to be unsolicited bulk commercial electronic mail.

N.C.Gen.Stat. § 1–75.4(4).

Inasmuch as the North Carolina Supreme Court has held that such jurisdictional statute applies to a defendant who meets the minimal contacts requirement of *International Shoe Co. v. Washington, supra,* the two-pronged approach approved by the circuit in *English & Smith, supra,* "collapses into the question of whether (the Defendants have) the minimum contacts with North Carolina." *Fieldcrest Mills, Inc. v. Mohasco Corp.,* 442 F.Supp. 424, 426 (M.D.N.C.1977). The statutory and constitutional inquiries merge. *Hiwassee Stables, Inc. v. Cunningham,* 135 N.C.App. 24, 27, 519 S.E.2d 317 (1999). Even though the inquiries merge, if jurisdiction is not authorized under the North Carolina Long Arm Statute, the court need not engage in additional due process analysis.

There have been no allegations that would satisfy either § 1–75.4(4)(b) or (c). Turning then to Subsection (a), plaintiff must show that "solicitation or services activities" have been carried on within North Carolina "at or about the time of the injury" by or *on behalf* of the foreign defendants in conjunction with the "out-of-state act."

Clearly, it appears that the subject "out-of-state act" of the foreign defendants is

---

8. EREI admits that it has sold at least one unrelated guitar to a resident of this state.

the sale of allegedly infringing guitars and other goods through its exclusive distributor EREI, which up to this point has been to residents of states other than North Carolina. The "solicitation or services activities" would appear to be EREI's maintaining, at about the same time of such sales, a website advertising and offering for sale allegedly infringing guitars and other goods, accessible by residents of the State of North Carolina.

The appellate courts have had occasion to consider personal jurisdiction in the context of websites under the North Carolina Long–Arm Statute with respect to websites. In *Dailey v. Popma*, 191 N.C.App. 64, 662 S.E.2d 12 (N.C.App. 2008), the North Carolina Court of Appeals held that:

> The internet presents unique considerations when it comes to issues of personal jurisdiction. Because of the nature of the internet, this Court ... adopted the Fourth Circuit's personal jurisdiction test for internet communications set out in *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002), *cert. denied*, 537 U.S. 1105, 123 S.Ct. 868, 154 L.Ed.2d 773 (2003). In this case, we adopt the Fourth Circuit's refinement of that test in *Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002), *cert. denied*, 538 U.S. 1035, 123 S.Ct. 2092, 155 L.Ed.2d 1065 (2003). Because plaintiff has presented no evidence suggesting that defendant, through his internet postings, manifested an intent to target and focus on North Carolina readers, the record contains no basis, under the *Young* test, for asserting personal jurisdiction over defendant.

*Id.*, at 14.

First, in *ALS Scan*, the Court of Appeals for the Fourth Circuit held that "specific jurisdiction in the Internet context may be based only on an out-of-state person's Internet activity directed at [the forum state] and causing injury that gives rise to a potential claim cognizable in [that state]." *Id.* (citation omitted). Second, in *Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir.2002), the appellate court more specifically held that federal courts should "look at whether the defendant has expressly aimed or directed its conduct toward the forum state." *Id.*, at 262–63 (citations omitted).

■ The undersigned has given particular consideration to the direction of the appellate court in *Young* that it look at whether defendants "expressly aimed" its conduct toward residents of North Carolina. The court cannot find such precise targeting. The website maintained by EREI—which plaintiff does not dispute lacked any checkout feature or mechanism for a customer to place an order without calling Nevada—is not unlike an ad placed in a national publication with a telephone number provided for further inquiry. Plaintiff has provided no evidence or allegations that either the foreign defendants or EREI targeted consumers in North Carolina in any manner. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 337 (5th Cir.1999) (refusing to allow personal jurisdiction over defendant whose only connection with forum was a website providing users with a printable mail-in order form, a toll-free telephone number, and defendant's mailing address). Even advertisements and solicitations that are not targeted to the forum, but are made in nationally available publications that find their way into the forum, will not support a finding of general jurisdiction, even when coupled with *de minimus* sales in the forum. *Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir.1971). In *CEM Corp. v. Personal Chemistry AB*, 192 F.Supp.2d 438 (W.D.N.C.2002), the then Chief Judge of

this district held in a similar action,[9] as follows:

> CEM also shows that PC has advertised and continues to advertise on a website accessible in North Carolina. Again, the website is not specifically targeted to North Carolina residents. The court finds that PC's passive advertisement on a website accessible in North Carolina does not support general personal jurisdiction over PC in North Carolina. *Jim Myers & Son, Inc. v. Motion Indus., Inc.,* 140 F.Supp.2d 595, 600 (W.D.N.C. 2001) ("[P]assive website, which is not used to make sales and which is not related in any way to the contracts or events giving rise to [the] action, does not provide a basis for personal jurisdiction.").

*Id.,* at 441.

■ In attempting to argue that this court has both personal and specific jurisdiction, plaintiff has asserted a "stream of commerce" argument despite *any* averment of *any* sales of allegedly infringing goods in North Carolina. Mere conclusory allegations that the foreign defendants are conducting business in the forum state are insufficient in the face of affidavits provided by such defendants that they have not conducted business in the forum. Thus, plaintiff's reliance on *Bush v. BASF Wyandotte Corp.,* 64 N.C.App. 41, 306 S.E.2d 562 (1983) is misplaced inasmuch as defendant in *Bush* did not proffer any evidence that refuted plaintiff's allegation. Plaintiff's reliance on *Dowless v. Warren–Rupp Houdailles, Inc.,* 800 F.2d 1305 (4th Cir.1986), is equally unavailing inasmuch as the actual products EREI sold in North Carolina where not only not allegedly infringing goods, they were not goods of the foreign defendants. While it would be fair to attribute EREI's acts undertaken on behalf of the foreign defendants in the forum to such defendants, it would be equally unfair to attribute to the foreign defendants EREI's sales of goods of other manufacturers.

Plaintiff has also contorted the "stream of commerce" theory to, in essence, argue that even though she cannot point to a single infringing good actually making its way to North Carolina, either directly or through resale, these defendants have placed such goods into a stream of commerce that could eventually find its way to North Carolina. The North Carolina cases plaintiff relies on, however, are product liability cases wherein the product did in fact find its way through the stream of commerce to North Carolina and injure a resident. *See Cox v. Hozelock, Ltd.,* 105 N.C.App. 52, 411 S.E.2d 640 (1992), *Warzynski v. Empire Comfort Systems, Inc.,* 102 N.C.App. 222, 401 S.E.2d 801 (1991); and *Bush v. BASF Wyandotte Corp., supra.*

The actual stream of commerce theory is neither as broad or deep as plaintiff's argument suggests. In *Lesnick v. Hollingsworth & Vose Co.,* 35 F.3d 939 (4th Cir. 1994), the Court of Appeals for the Fourth Circuit adopted a narrow interpretation of the stream of commerce theory in cases where the cause of action did not arise from defendant's products in the forum state. *Id.,* at 944. The appellate court cautioned that "we should not read the 'stream of commerce' language out of context,'" and held that the stream of commerce theory requires "purposeful activity on the part of defendants to establish a

---

**9.** In *CEM,* a North Carolina corporation sued a Swedish corporation, alleging breach of an agreement settling patent infringement litigation that had been conducted in Sweden. After the action in this district was filed, the Swedish corporation moved to dismiss for lack of personal jurisdiction, which the district court granted.

meaningful contact with the forum state." *Id.*

Plaintiff has also argued that the court should find personal jurisdiction to exist under Rule 4(k)(2), Fed.R.Civ.P., which provides as follows:

**(2) Federal Claim Outside State–Court Jurisdiction.**

For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:

(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and

(B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed.R.Civ.P. 4(k)(2). While the foreign defendants argue that they "have no obligation to provide Plaintiff with an alternative state that may be a proper forum for the exercise of personal jurisdiction over Foreign Defendants," they concede plaintiff "may properly obtain personal jurisdiction over Foreign Defendants in other forums in the United States." Reply, at p. 7. Invocation of Rule 4(k)(2) appears to be misplaced inasmuch as it is readily apparent that defendants are subject to personal jurisdiction in a number of states, not the least of which may well be Nevada.

\*     \*     \*

■ If the district court grants the Motion to Dismiss the foreign defendants, it would also appear likely that the remainder of the case against EREI would also need to be dismissed inasmuch as such foreign defendants are necessary parties. As it stands at this point, the court will recommend that the foreign defendants' Motion to Dismiss be granted and that the remainder of the action be dismissed. In determining that the foreign defendants are necessary, the court has considered their relationship to the matter under consideration. As outlined above, the theory of the case is that the foreign defendants made false applications for marks then and now owned by plaintiff. Any claims against EREI are predicated upon resolution of such trademark issues in plaintiff's favor. The undersigned has next considered whether the proceeding can continue in the absence of the foreign defendants—clearly, it can't as this court would be unable to resolve the dispute between the remaining parties.

By forcing a court to examine the effects of a suit on parties not before it, Rule 19 of the Federal Rules of Civil Procedure "takes . . . account of the very real, very substantive claims to fairness on the part of outsiders that may arise in some cases."

*Teamsters Local Union No. 171 v. Keal Driveaway Co.,* 173 F.3d 915, 917 (4th Cir.1999). The undersigned will, therefore, recommend that the remainder of this action be dismissed without prejudice.

\*     \*     \*

As the foreign defendants point out in their Reply, neither plaintiff nor the moving defendants have raised the issue of transfer. *Id.* *See* 28 U.S.C. § 1404(a). The issue having been neither raised nor briefed by the parties, the undersigned will not take up such issue.

### RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendants Fillmore Company, Ltd.'s and Yusa Noriyuki's Motion to Dismiss (# 28 & # 41) be **ALLOWED,** and that the Complaint against the such defendants be **DISMISSED** without prejudice.

**IT IS FURTHER RECOMMENDED** that the remainder of this action be **DISMISSED** without prejudice for lack of the

presence of parties to this action under Rule 19(b), Fed.R.Civ.P.

**IT IS FURTHER RECOMMENDED** that EREI's Motion to Dismiss (# 14) be **DENIED** without prejudice as moot.

### *Time for Objections*

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *United States v. Schronce,* 727 F.2d 91 (4th Cir.), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).

Signed: June 1, 2010.